IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

Gail M. Trenda,                              )
                                             )
                    Plaintiff,               )
                                             )
        v.                                   )        Case No. 3:08-cv-92
                                             )
Michael J. Astrue, Social Security          )
Administration Commissioner,                )
                                             )
                    Defendant.               )

## REPORT AND RECOMMENDATION

Plaintiff Gail M. Trenda (hereinafter "Trenda," "plaintiff," or "claimant"), initiated this action under 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. (Tr. 22-36). Both parties have moved for summary judgment. (Doc. #10, Doc. #15).

Summary of Recommendation

The magistrate judge finds the Administrative Law Judge's decision is not supported by substantial evidence, since it failed to properly consider Trenda's daily activities and employment, and failed to give proper weight to a 2004 Functional Capacity Evaluation ("FCE") and to her treating physician's opinion. It is **RECOMMENDED** that the decision of the Commissioner be **REVERSED** and this action be remanded to the Commissioner with directions to award Trenda disability benefits for the claimed closed period.

## Background

Trenda protectively filed her initial application for disability insurance benefits on January 11, 2002  under Title II of the Social Security Act, 42 U.S.C. §§ 401-433.  (Tr. 60-64). She alleged a disability onset date of May 13, 2001.  (Tr. 60-64).  Her application was denied initially and on reconsideration.  (Tr. 39-44).  After a hearing where Trenda was represented by a non-attorney, an Administrative Law Judge ("ALJ") issued a decision June 30, 2003, finding that Trenda could not perform her past relevant work but could perform other jobs in the national economy, so therefore, Trenda was not disabled within the meaning of the Social Security Act. (Tr.  258-65).  Trenda sought review of the ALJ's decision, but on June 5, 2004, the Appeals Council denied her request for review.  (Tr. 278-81).

Trenda filed a subsequent application for disability insurance benefits with a protective filing date of March 29, 2004.  (Tr. 320-22, 406).  Her application was again denied initially and on reconsideration.  (Tr. 269-74).  Trenda obtained counsel and requested a second hearing.  (Tr. 289-91).  She alleged a closed period of disability from May 13, 2001 through February 10, 2005, the day before she returned to employment.  (Tr. 417-21).  The second hearing was held on June 7, 2006.  Trenda appeared with her attorney and testified at the hearing.  Vocational expert, Dr. David Perry, also testified..  (Tr. 733).  The ALJ issued his decision on August 21, 2006, finding plaintiff was not disabled.  (Tr. 22-36).  The Appeals Council subsequently denied Trenda's request for review, making the decision of the ALJ the Commissioner's final decision. The parties agree that the ALJ constructively reopened the final decision in Trenda's prior claim for disability.  Thus, the court should consider the entire period of disability alleged by Trenda.

2

Trenda was 41 years old on the alleged disability onset date, and was 45 years old at the end of the alleged closed period.  She attended one year of college and has worked as a licensed practical nurse at nursing homes and hospitals, and has performed some home health care.  (Tr. 77, 82, 98, 374).  Trenda alleges she was disabled from May 13, 2001 through February 10, 2005, due to injuries she suffered as a result of being run over by a car approximately four times, resulting in fractures to her right tibia and fibula.  She underwent several surgical procedures on the leg, and has had prolonged difficulties with her leg and knee.  Trenda also fractured her left ankle during the alleged closed period of disability (Tr. 255), and has a history of deQuervains tenosynovitis, trochanteric bursitis, and depression.

<u>Legal Standard</u>

Upon review of the pleadings and transcript of the record, the court can affirm, modify, or reverse the decision of the Commissioner, with or without remanding the cause for a rehearing.  42 U.S.C. § 405(g).  To affirm the Commissioner's decision, the court must find that substantial evidence appearing in the record as a whole supports the decision.  <u>See</u> <u>id.</u>; <u>Cruse v. Bowen</u>, 867 F.2d 1183, 1184 (8th Cir. 1989).  "This standard requires a more searching review than the substantial evidence standard, and [the court will] take into account record evidence that fairly detracts from the ALJ's decision."  <u>Tilley v. Astrue</u>, No. 08-3537, 2009 WL 2747866, at *3 (8th Cir. Sept. 1, 2009) (citing <u>Minor v. Astrue</u>, 574 F.3d 625, 627 (8th Cir. 2009)).  The court must  "take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contradictory."  <u>Minor</u>, 574 F.3d at 627 (citing <u>Wilson v. Sullivan</u>, 886 F.2d 172, 175 (8th Cir. 1989)) (quoting <u>Jackson v. Bowen</u>, 873 F.2d 1111, 1113 (8th Cir. 1998)).  <u>See also</u>, <u>Burress v. Apfel</u>, 141 F.3d 875, 878 (8th Cir. 1998) ("As this court has repeatedly stated,

the 'substantial evidence in the record as a whole' standard is not synonymous with the less

rigorous 'substantial evidence' standard."); <u>Gavin v. Heckler</u>, 811 F.2d 1195, 1199 (8th Cir.

1987) ("It is not sufficient for the district court to simply say there exists substantial evidence

supporting the [Commissioner] and therefore the [Commissioner] must be sustained.").

<u>Discussion</u>

The ALJ employed the familiar five-step test to determine whether Trenda was disabled

during the alleged closed period.[1]   The ALJ determined plaintiff had not engaged in substantial

gainful activity during the alleged closed period of disability.  (Tr. 24).  He found Trenda has the

following severe impairments that do not meet or equal any listed impairments, which finding is

not in dispute:

> comminuted right tibia and fibular fracture (status post fixator and screws placed
> through the tibia); osteochondritis dissecans lesion of the medial femoral condyle
> with traumatic chondromalacia (status post arthroscopic debridement of the
> osteochondral lesion and microfracture of the knee along with arthroscopic partial
> medial meniscectomy 4/02, and arthroscopic debridement and microfracture of
> the medial femoral condyle 5/03); and neuropathic pain of the right lower
> extremity (20 CFR 404.1520(c)).

(Tr. 25).  The ALJ noted that Trenda has also been diagnosed with trochanteric bursitis, a

fracture of her left ankle, deQuervains tenosynovitis, and depression, but that these conditions

impose no more than minimal limitations on her ability to perform work.  (Tr. 25).  He

determined that Trenda is unable to perform any past relevant work, but there are jobs that exist

in significant numbers in the national economy she could have performed during the alleged

---

[1]The five steps are:  (1) whether he claimant is engaged in any substantial gainful
activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or
equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App.1; (4) whether the claimant can
return to her past relevant work; and (5) whether the claimant can adjust to other work in the
national economy.  20 C.F.R. § 404.1520(a)(5)(i)-(v).

closed period of disability.  (Tr. 35).  Specifically, he found she could perform sedentary work as a medical clerk or telephone quotation clerk.  (Tr. 36).

The ALJ found Trenda's "medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that claimant's statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible."  (Tr. 28).  The ALJ decided that Trenda's treating physician's opinions were not entitled to controlling weight, and that the FCE performed by Bryce Nelson, OTR/L, was not supported by objective medical evidence, was inconsistent with the record, and was based on Trenda's subjective complaints.  (Tr. 33-34).

Plaintiff alleges the ALJ committed the following errors:  rejecting the Nelson FCE; relying on plaintiff's employment and daily activities that occurred after her closed disability period; failing to give proper weight to the treating physician's opinions; relying on improper testimony of the vocational expert; failing to shift the burden at the fifth step of the analysis; improperly considering her prior work history; and failing to consider the combined effect of all of plaintiff's severe and non-severe impairments.

Deterioration in Condition After Closed Period

During the hearing the ALJ questioned Trenda about her return to work in February 2005 and the difficulties she experiences at work and in other activities.  He then asked her whether her condition at the time of the hearing was better, worse or the same as it was when a FCE was performed in June 2004.  She responded, "I think the leg is worse since then."  (Tr. 771).  The ALJ did not ask any follow-up questions to clarify whether Trenda's characterization of her

condition was due to the effect of working full days, or whether her condition was worse at all times for all activities.

Defendant argues that Trenda has repeatedly claimed her condition has deteriorated since 2004, including instances prior to her testimony.  Memorandum in Support of Defendant's Motion for Summary Judgment, at 24, 26.  Defendant specifically cites to two questionnaires in the record to support the claim that Trenda reported in November of 2004, and in September of 2005, that her pain and swelling had worsened since July of 2004.  (Tr. 384-87, 408-11).  A closer look at the questionnaires reveals that defendant cites to one single questionnaire that was printed out two times, originally in November of 2004, and then reprinted in September of 2005. It is evident on the face of the questionnaires that they are the same, especially considering the 2005 questionnaire does not reflect the prescriptions Trenda was taking at that time, namely the Neurontin which was prescribed to Trenda on December 23, 2004, to treat her neuropathic pain. (Tr. 540).  The dates on the questionnaires do not reflect when Trenda made the report, but merely reflect the printing dates of the report.  Therefore, it should be concluded that Trenda reported only one time prior to her testimony, sometime between July of 2004 and November of 2004, that the pain and swelling had worsened since July of 2004.  This was shortly before Trenda saw a pain specialist.  (Tr. 538-40).  Defendant's reliance on the questionnaires to support the allegation that Trenda repeatedly claimed her condition had deteriorated since 2004 is misplaced.

Plaintiff argues that her testimony indicates that the deterioration in her condition occurred as a result of her return to work.  Brief in Support of Plaintiff's Motion for Summary Judgment, at 17.  Trenda did mention in her testimony that she had worked a 12-hour shift the

Saturday before the hearing, and she was using a cane on the date of the hearing.  Also, her statement about her leg being worse is inconsistent with medical records and with her other testimony, and the statement needed clarification.  In the context of the entire record, plaintiff's interpretation of the testimony seems more reasonable than the ALJ's negative interpretation.

The ALJ repeatedly cited this one statement by Trenda throughout his decision to support his findings. (Tr. 28, 29, 31, 32, 33, 34).  The effect of the ALJ's reliance on the statement was to create a domino effect which reverberated throughout the opinion.  Consideration of this testimony is appropriate, so long as it is placed in the context of the entire record.  Upon review of the entire record, the magistrate judge is left with the strong impression that the ALJ focused upon this comment without regard to its context or conflicting evidence in the record, and he used it unfairly to discredit Trenda's credibility, as well as the 2004 FCE and her treating physician's opinions.

<u>The FCE performed by Therapist Bryce Nelson</u>

The first ALJ found in June 2003 that Trenda had the residual functional capacity "to lift 10 pounds occasionally, sit 6 hours and stand/walk 2 hours in an 8-hour work day requiring alternating position change (can sit for 1 hour at a time), moderate concentration limitations and option to elevate leg for an hour, twice a day to a 45-degree angle." (Tr. 261).  The second ALJ rejected the RFC determination by the first ALJ, finding, "the claimant is less significantly limited tha[n] determined by the earlier decision." (Tr. 35).

Bryce Nelson, OTR/L, performed a FCE of Trenda at Meritcare Medical Center on June 18, 2004, at the request of the vocational rehabilitation department at Southwest Human Service Center. (Tr. 529).  Occupational Therapist Nelson found that Trenda could perform sedentary to

light work, for up to six hours a day with a gradual increase to an eight-hour workday.  (Tr. 529).

Specifically, he found she could sit four hours in 30 minute durations, stand two hours in 15

minute durations, and walk three hours for occasional, long distances.  (Tr. 529A).  She could

carry 17 pounds occasionally, but carrying with the right or left was not recommended on a

frequent basis.  (Tr. 535).  Therapist Bryce Nelson made detailed recommendations concerning

several other activities as well.  (Tr. 529A-535).

Therapists are considered to be other medical sources.  Sloan v. Astrue, 499 F.3d 883,

888 (8th Cir. 2007) (citing 20 C.F.R. §§ 404.1513(d), 416.913(d) (2007)).   Evidence from

therapists can be used to show the severity of the claimant's impairments, and how the

impairments affect the claimant's ability to work.  20 C.F.R. § 404.1513(d).  In deciding what

weight to give a therapist's opinion, the ALJ generally should consider the relationship between

the claimant and the therapist, how consistent the opinion is with other evidence, the degree to

which the therapist presents relevant evidence to support the opinion, how well the therapist

explains the opinion, whether the therapist has a specialty related to the claimant's impairment,

and any other factors that tend to support or refute the opinion.  Sloan at 889.

The ALJ considered the Nelson assessment, but determined that it "is not well supported

by the objective medical evidence, and is inconsistent with other substantial evidence in the

record."  (Tr. 34).  "Specifically, the claimant's workplace tolerance was noted to be 6 hours, but

the claimant testified that she works both 8 and 12-hour shifts currently.  This is despite her

testimony that her condition has deteriorated since the functional assessment in June of 2004."

(Tr. 34).  The ALJ determined that the assessment was based on Trenda's subjective complaints,

which he found not credible.  He cited two entries in the medical records to demonstrate that

8

Trenda's subjective complaints are not credible.  "On March 28, 2005, the claimant noted no ill effects from her return to work (Exhibit B-25F).  She has been doing quite well and has returned to work and this has gone well for her (Exhibit B-27F)." (Tr. 34).  Ultimately, the ALJ concluded that "[t]he evidence is simply not consistent with the limitations demonstrated by the claimant in the functional assessment." (Tr. 34).  The ALJ instead relied upon the assessment provided by the nonexamining medical consultants.  (Tr. 34, 35).

The court finds that the assessment performed by Bryce Nelson, OTR/L, is entirely consistent with the evidence in the record.  Therapist Bryce Nelson noted in June 2004 that Trenda could work six hours a day with a gradual increase to eight-hour days, and that is what actually occurred over the next several months.  Trenda returned to work on February 11, 2005 as a traveling nurse and worked 24 hours per week.  (Tr. 390, 750).  Eventually she took a job as a supervisor at a nursing home and increased the hours she worked.  At the hearing before the ALJ in June of 2006, Trenda testified that she works 24 to 36 hours per week, and that she works eight-hour days three days a week and a 12-hour shift every third weekend.  She receives special accommodations, including the ability to take breaks and elevate her leg as needed.  (Tr. 752-54, 756, 783-84, 794, 796).  This evidence is consistent with the work day tolerance and limitations demonstrated in Therapist Bryce Nelson's functional assessment.

The ALJ found Therapist Nelson's assessment was based on Trenda's subjective complaints, and he cited Trenda's testimony that her condition has deteriorated since June of 2004 to undermine Trenda's credibility and find Nelson's assessment itself lacking in credibility.  The magistrate judge has already noted the ALJ did not consider Trenda's testimony about her worsened condition in the context of the entire record.  In addition, two portions of the medical

record cited by the ALJ to further demonstrate Trenda's lack of credibility, and to illustrate that Therapist Nelson's assessment is inconsistent with the evidence, actually bolsters Nelson's assessment.  "On March 28, 2005, the claimant noted no ill effects from her return to work (Exhibit B-25F).  She has been doing quite well and has returned to work and this has gone well for her (Exhibit B-27F)."  (Tr. 34).  When Trenda reported in March of 2005 that she had "no ill effects, physically, from the return to work thus far," (Tr. 669) and that work has gone well for her (Tr. 673), she had only been back to work for five weeks and was working part time.  (Tr. 327).[2]  Therapist Bryce Nelson recommended that Trenda could work six hours a day, and then gradually increase her hours.  The reports made by Trenda are consistent with his recommendation in that she was tolerating less than full-time work, and later she was able to increase her hours with special accommodations.

Even if Trenda's subjective complaints were not fully credible, the court finds that the functional capacity assessment was not based on Trenda's subjective complaints.  Thus, it deserved more weight in the disability determination than the assessment by the nonexamining consultants.  Functional Capacity Assessments are designed to produce an objective measure of the patient's efforts.  Baker v. Barnhart, 457 F.3d 882, 886 (8th Cir. 2006).  Therapists are sensitive to those who put forth less than maximum effort.  Bradley v. Barnhart, 460 F.Supp.2d 1044, 1049 (S.D. Iowa 2006) (citing  Baker at 886).  Therapist Nelson noted that the assessment was a valid representation of Trenda's physical capabilities, and that the assessment was "based upon consistencies and inconsistencies when interfacing grip dynamometer graphing, pulse

---

[2]Copies of Trenda's paychecks indicate that she worked 60.5 hours for the two week period preceding March 26, 2005, and that she worked 60 hours for the two week period preceding April 9, 2005.  (Tr. 326).

variations, weights achieved, and selectivity of pain reports and pain behaviors." (Tr. 529).

Therapist Nelson measured Trenda's heart rate before and after activities, consistently watched

for pain behaviors, and compared measurements throughout the assessment which would reveal

inconsistencies and indicate whether Trenda was putting forth a safe level of effort, or

manipulated effort. (Tr. 529A-635). It is clear on the face of the assessment that it was not

based on Trenda's subjective complaints. Nelson's FCE should not have been rejected.

<u>Employment After the Closed Period of Disability</u>

When Trenda originally returned to work in February 2005 she only worked part time,

and after her employer increased her hours she changed jobs. (Tr. 750-752). At the time of the

hearing Trenda was working 24 to 36 hours per week, was working a 12-hour shift every third

weekend, and received special accommodations, including the freedom to take breaks and

elevate her leg as needed. (Tr. 750-753). The ALJ repeatedly referred in his opinion to Trenda's

reports in March of 2005 that she had "no ill effects, physically, from her return to work thus

far," (Tr. 669) and that things were going well (Tr. 673). However, the ALJ overlooked the fact

that Trenda had only been working five weeks in March of 2005 and only part time, and that her

pain specialist, Dr. Sivanna, noted four months later in July of 2005, when she was working

more hours, that "[s]ometimes, she feels that by the end of the shift, she has significant

discomfort." (Tr. 670). During that particular July visit, Dr. Sivanna increased Trenda's dosage

of Neurontin and prescribed Tramadol as needed for severe pain. (Tr. 670). One month later,

Trenda reported that work "has gone reasonably well if she avoids lifting, which she relates

results in soreness in her knee and leg." (Tr. 672).

11

The ALJ cited Trenda's return to work as inconsistent with her alleged limitations and as evidence that she was not disabled, noting that Trenda's "work activity can be used as a supporting factor in the determination of her residual functional capacity" and that the "physical and mental aspects of the claimant's work activities will be used to support the determination as to her residual functional capacity during the alleged closed period of disability." (Tr. 24-25). Neither the ALJ nor the Commissioner cite any authority for this proposition. Reference to these factors disregards the fact that Trenda did not claim to be disabled at the time of the hearing; she claims a closed period of disability. Trenda's later work is consistent with her alleged limitations and did not occur during a time period for which she is claiming disability. The ALJ should not have considered work activities which occurred after the closed period to determine her abilities during the alleged disability period or as evidence against her claim. Trenda does not suffer from a progressive disease that would be expected to worsen continually over time. In such a case, work activity may be strong evidence that earlier allegations of disability lack credibility. Rather, Trenda was recovering from an injury, and her condition would be expected to improve over time, to a point.

Although the Eighth Circuit has not addressed whether a claimant's employment after an alleged closed period of disability can be used against a claimant, the Ninth Circuit has commented, "Neither the Social Security Act nor regulations direct the SSA to treat an applicant's employment after a claimed period of disability as evidence against the applicant's claim." Moore v. Comm'r of Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002). In analyzing the Social Security Act with respect to later employment the Ninth Circuit opined as follows:

Although Social Security regulations provide that employment "during any period" of claimed disability may be probative of a claimant's ability to work, 20 C.F.R. §§ 404.1571, 416.971 (emphasis added), no similar consideration is recommended with regard to work after the claimed period of disability. It is clear that "the framers of the Act contemplated that some applications for benefits would be made which would result in an award of benefits after the claimant had recovered from his disability." Myers v. Richardson, 471 F.2d 1265, 1267 (6th Cir.1972) (citing 42 U.S.C. § 416(i)(2)(D) ("period of disability shall end with . . . the second month following the month in which the disability ceases")); cf. Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 805, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999) ("Improvement in a totally disabled person's condition, while permitting that person to work, will not necessarily or immediately lead the SSA to terminate [disability] benefits."). Indeed, the SSA's regulations provide for a "trial work period" in which a claimant may "test your ability to work and still be considered disabled." 20 C.F.R. § 404.1592.

Given that the Social Security Act and regulations are designed "to encourage individuals who have previously suffered from a disability to return to substantial gainful employment," Flaten v. Secretary of HHS, 44 F.3d 1453, 1458 (9th Cir.1995), we hold that an applicant's employment that begins after the end of the period for which the applicant is seeking disability benefits, unless wholly inconsistent with the claimed disability, is not a "specific and legitimate" reason for rejecting the opinions of examining physicians that an individual is disabled. It follows that such a record of work does not supply the more demanding "clear and convincing" reason to reject the medically supported testimony of the applicant.

Id. at 924-25.  Like the Ninth Circuit, this court finds that Trenda's employment after her alleged

period of disability should not have been used as evidence to determine her ability to work

during the closed period because it is not inconsistent with her claimed disability.  This is

especially true given the accommodations afforded Trenda in performing her job.  Thus,

Trenda's later employment should not have been considered as evidence against her closed

period claim.

<u>Subjective Complaints</u>

"An adjudicator may not disregard a claimant's subjective complaints solely because the

medical evidence does not fully support them," or solely based on personal observations.

13

Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).  Several factors must be considered in analyzing a plaintiff's subjective complaints:

> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:  1. the claimant's daily activities; 2. the duration, frequency and intensity of the pain; 3. precipitating and aggravating factors; 4. dosage, effectiveness and side effects of medication; 5. functional restrictions.

Id.  "Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole."  Id.

In analyzing the credibility of Trenda's subjective complaints, the ALJ overlooked evidence that should have been considered in her favor, and he improperly considered her smoking and several daily activities she performed after alleged closed period of disability.  The cumulative effect casts serious doubt on whether the ALJ gave full and fair consideration to all of the evidence presented, as required by Polaski.

It appears the ALJ did not take into account the fact that Trenda has been prescribed pain medications as well as other medications since the time of her accident.  Immediately after her accident she was prescribed Percocet, Toradol, and Morphine Sulfate for pain.  (Tr. 137, 445, 457).  Since that time she has continuously been prescribed, and has been taking various anti-inflammatory and pain relieving medications including Hydrocodone, Ultracet, Ultram, Bextra, Lorcet, Neurontin, Cymbalta, Lyrica, Mobic, Tramadol, and Toradol.  (Tr. 133, 187, 196, 220, 243, 256, 414, 415, 488, 492, 507, 538, 549, 550, 552, 553, 567, 597, 607, 609, 618, 625, 630, 663, 670, 672, 673, 675, 679, 691, 702, 691, 698, 702, 704, 705, 707, 708, 744, 745).  She also uses over the counter pain relievers such as Aleve, Ibuprofin, Acetaminophen, and Aspirin at work and on other occasions where narcotics are incompatible.  Although a claimant's

allegations of pain may be discredited by evidence that the claimant has taken medications for pain only on an occasional basis, Cline v. Sullivan, 939 F.2d 560, 568 (8th Cir. 1991), such is not the case with Trenda.  At the hearing, Trenda testified that she was taking Neurontin daily, a medication used to treat neuropathic pain, along with Cymbalta and Lyrica.  (Tr. 744).  She testified to taking Ultram or Toradol two to three times a week for pain, and Hydrocodone occasionally as needed.  (Tr. 744-45).   Although an ALJ need not discuss every factor, there is no indication beyond the summary of Trenda's testimony that the ALJ fully considered Trenda's subjective complaints of pain, in light of the overwhelming evidence that she has continuously used powerful pain relievers and anti-inflammatory drugs.

The ALJ found that Trenda's "failure to comply with recommendations to stop smoking weighs against the credibility of her allegations of disability during the alleged closed period of disability."  (Tr. 32).  A doctor urged her to quit smoking as early as 2002 when she complained of respiratory issues, but she did not quit completely until October 2005.  Failure to follow through on advice to quit smoking is indicative of an addiction, not lack of credibility.  Trenda's failure to stop smoking, as recommended, had no impact on her impairments; therefore, it is not relevant to the credibility of her allegations of disability.  Kelley v. Callahan, 133 F.3d 583, 589-90 (8th Cir. 1998).

The plaintiff argues that the ALJ merely "gave lip service" to Trenda's excellent work history.  Brief in Support of Plaintiff's Motion for Summary Judgment, at 19.  It is difficult to determine whether the ALJ gave full consideration to Trenda's work history.  However, the court notes that an ALJ need not discuss every factor, but must take each one into account.  Casey v. Astrue, 503 F.3d 687, 695 (8th Cir. 2007).

The ALJ used Trenda's current activities of daily living against her alleged closed period

of disability, rather than distinguishing between her current activities and the actual activities of daily living she performed during the time she claims she was disabled.  Although the ALJ usually referred to the dates which Trenda reported doing each activity, he still referred to the later activities as evidence that she had the functional capacity to engage in substantial gainful activity during the closed period.  The ALJ cited to Trenda's ability to drive, work as a nurse, shovel snow, vacuum, do laundry, and ride, water, and brush her horses.  (Tr. 26, 28, 29, 30).  The couple of times Trenda rode horse her boyfriend boosted her up into the saddle, she rode with her leg out of the stirrup, and limped after dismounting the horse.  When Trenda shoveled snow for 10 minutes, vacuumed, and did laundry she aggravated her condition, resulting in pain and visits to her chiropractor.  (Tr. 709, 711B, 712).  The ALJ did not acknowledge the consequences Trenda suffered for engaging in these activities or recognize that all of these activities occurred during a time period for which Trenda is not claiming she was disabled; therefore, the ALJ should not have considered them in determining Trenda's abilities during her alleged closed period of disability.

There is no controlling law in the Eighth Circuit on whether an ALJ can use a claimant's later activities of daily living after a closed period of disability as evidence that the claimant was not disabled during the closed period.  Also, defendant has cited no case law in which an ALJ actually used later activities as evidence against a closed period claim.  Case law from other circuits illustrates that an ALJ should only consider a claimant's activities of daily living during the time claimed disability period to determine whether the claimant was disabled during that time,  not activities performed later, after the claimant has improved.  See White v. Comm'r of Soc. Sec., 572 F.3d 272, 283-85 (6th Cir. 2009), Palmer v. Astru, 284 Fed.Appx. 873, 876 (3rd Cir. 2008) (illustrating that later improved activities of daily living are not used to infer that a

claimant could have performed those activities during the closed period, but are used show when the period of disability ended).

The ALJ cited the following activities performed by Trenda during the alleged closed period of disability:  watching television, using the computer, dusting occasionally, reading books, weeding the garden,[3] folding laundry, grocery shopping, and doing dishes sitting in a chair.  (Tr. 29-30).  As courts have repeatedly held, "[A] person's ability to engage in personal activities such as cooking, cleaning, and hobbies does not constitute substantial evidence that he or she has the functional capacity to engage in substantial gainful activity."  Kelley at 589.

When Trenda grocery shopped she rode a wheelchair or motorized cart, and her husband pushed the grocery cart.  (Tr. 126, 365).  She helped carry groceries into the house to the extent she could.  In September of 2002 Trenda was returning home from grocery shopping when she fell out of the truck and broke her left ankle.  (Tr. 30).  The ALJ determined that being in the back of a truck indicates that Trenda was able to climb onto it, thus indicating an ability to climb.  (Tr. 30).  The record is somewhat confusing as to how this incident happened.  Trenda testified that some groceries and a medicine bag with a handle were located on her side of the truck, and when she opened the door her foot caught in the handle of the medicine bag, and she fell "out" of the truck.  (Tr. 771).  The ALJ relied on a medical history notation made by a doctor who saw Trenda for a breast mass that she fell "off" a truck to infer that she is able to climb onto the bed of a truck.  However, the record on the whole indicates Trenda fell out of a truck cab, not off a truck bed.  The ALJ's characterization of Trenda's ability to grocery shop and the inference he made that she can climb appear to stem from confusion of the actual circumstances.

---

[3]The ALJ pulled this information from a 2004 pain questionnaire.  At the hearing Trenda testified to a later occasion when she pulled weeds around her house for 30 minutes.  She explained that she has to sit  flat on the ground to perform this activity.

Taking the entire record into account, including Trenda's activities of daily living, and distinguishing between those that occurred during and after her alleged closed period of disability, the court finds they are not inconsistent with the record as a whole. The ALJ's findings regarding the level of Trenda's daily activities and her complaints of subjective pain are not supported by substantial evidence.

Physicians' Opinions

The plaintiff argues that the ALJ erred in relying on the nonexamining consulting physicians' FCE in determining Trenda's functional capacity. "As a general rule, reports of nonexamining physicians deserve little weight in the overall evaluation of disability, especially in light of evidence to the contrary." Davis v. Schweiker, 671 F.2d 1187, 1189 (8th Cir. 1982) (citation omitted). Plaintiff argues that Trenda's treating physician's opinion should have been given more weight, especially in light of the fact that he is an orthopaedic doctor. The opinions of a specialist on a medical issue related to the specialty are generally entitled to more weight than opinions of a non-specialist. 20 C.F.R. § 404.1527(d)(4). However, the ALJ found that Dr. Askew's opinions were not well supported, were vague and conclusory, were inconsistent, and were based on plaintiff's subjective complaints, which the ALJ found not credible. When these circumstances are present, an ALJ may give a physician's opinion less weight. Stormo v. Barnhart, 377 F.3d 801, 805-06 (8th Cir. 2004), Kirby v. Astrue, 500 F.3d 705,709 (8th Cir. 2007).

"The record must be evaluated as a whole to determine whether the treating physician's opinion should control." Tilley, 2009 WL 2747866, at *4 (citation omitted). The ALJ gave diminished weight to Dr. Askew's opinions on Trenda's limitations in large part because the opinions relied on Trenda's own reports of pain and on Occupational Therapist Nelson's FCE.

18

The magistrate judge has already found that the ALJ did not afford appropriate weight to the Nelson FCE and that the ALJ improperly considered several factors in assessing Trenda's credibility regarding her complaints of pain, among them her continued smoking after receiving a doctor's recommendation to quit, activities she engaged in after her alleged closed period of disability, and her employment after the closed period.  The ALJ cited, for instance, Dr. Askew's statement in December 2004 that Trenda could maybe try sedentary work, but she "would probably have problems with this from what the claimant has told him in the office."  (Tr. 32, citing Tr. 666).  In addition, the ALJ noted that despite Dr. Askew's earlier opinions that Trenda would not be able to work, "the claimant returned to work at the level of substantial gainful activity on February 11, 2005."  (Tr. 32).  Dr. Askew recommended that if Trenda did try work, she would need to limit standing and sitting to one to two hours at a time and then elevate her feet to relieve swelling.  (Tr. 666).  When Trenda did return to work her employer offered several accommodations, including rest breaks as needed and elevation of her legs.  The ALJ briefly mentioned these accommodations, but he did not seem to consider their impact on Trenda's ability to perform substantial gainful activity, on her credibility, or on the appropriate weight to give Dr. Askew's opinions.  The magistrate judge finds the ALJ improperly dismissed Dr. Askew's opinions with respect to the closed period of disability, and his decision to rely on the non-examining consulting physicians is not supported by substantial evidence.

<u>Burden Shifting</u>

The plaintiff argues the ALJ failed to explicitly recognize that the burden of proof shifts to the Commissioner at step five of the sequential review.  <u>Brief in Support of Plaintiff's Motion for Summary Judgment</u>, at 6.  The ALJ referred to step five as follows:

Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security

19

> Administration.  In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education and work experience (20 CFR 404.1512(g) and 404.1560(c)).

(Tr. 24).  The court will not assume that the ALJ implicitly shifted the burden of proof.  Butler v. Sec'y of Health & Human Services, 850 F.2d 425, 426 (8th Cir. 1988).  Despite the fact that the ALJ used the word "limited" in describing the burden shift, he does expressly acknowledge that it is the Social Security Administration's burden to provide the evidence, and the evidentiary requirement actually imposed is more important than the label.

### Vocational Expert's Testimony

The plaintiff argues that the vocational expert misapprehended the definition of "substantial gainful activity" and that his testimony should have been stricken, as requested by plaintiff's counsel.  The court finds the vocational expert did misapprehend the definition of substantial gainful activity, because he understood substantial gainful activity was solely the ability to earn $830 a month, and not the ability to work a full-time job eight hours a day, five days a week, or its equivalent.  Bladow v. Apfel, 205 F.3d 356, 359 (8th Cir. 2000).  However, after plaintiff's counsel brought the error to the attention of the ALJ, the ALJ questioned the vocational expert again using the same hypothetical questions with the assumption that the individual could work eight hours a day.  (Tr. 797, 815).  Thus, the initial error was harmless.

### Combined Effect of the Impairments

Plaintiff's final argument is that the ALJ failed to consider the combined effect of all of her impairments.  Specifically, plaintiff alleges that the ALJ did not consider the effect her non-severe impairments had on each other, and upon her severe impairments.  An ALJ must consider in combination all of a claimant's impairments, regardless of whether any one of the

impairments standing alone would be non-severe, and must not fragment them in evaluating their effects.  Delrosa v. Sullivan, 922 F.2d 480, 484 (8th Cir. 1991) (citations omitted).

The court cannot determine from the ALJ's opinion whether he considered the combined effect of Trenda's impairments.  The ALJ discussed each impairment individually, but he did not make specific and well-articulated findings as to the combined effect the non-severe impairments may have had on Trenda's severe impairments.[4]   (Tr. 25-26).  Since the court has found the ALJ's primary findings lack substantial evidence, his failure to clearly articulate the combined effect of Trenda's impairments does not affect the outcome of this court's review.

Nature of Remand

Ordinarily when an ALJ has failed to properly consider evidence, the court will remand to the Commissioner for reconsideration of the evidence.  In this case such a remand would include reconsideration of Trenda's complaints of pain, the activities she could perform during the period of disability, the weight given to the Nelson FCE, the weight given to the treating physician's opinions, the shifting of the burden to the Commissioner at the fifth step of analysis, and the combined effect of all of Trenda's impairments.  Trenda has already had two hearings and claims only a closed period of disability, which ended over four years ago.  She was clearly disabled for a significant period of time after her injury and multiple surgeries.  Occupational

---

[4]Trenda had four surgeries in the first year after her accident.  (Tr. 140, 190, 192, 195, 519, 520).  She was on crutches due to the four surgeries until July 29, 2002, when she started "walking at home without the crutches."  (Tr. 256).  Unfortunately she fractured her ankle in September of 2002, which clearly set back her recovery.  (Tr. 255).  In January of 2003, she was told to wean from the crutches completely.  (Tr. 251).  However, she still had pain and required a fifth and final surgery on her knee which was performed on May 9, 2003, almost two years after her accident.  (Tr. 516).  It is unclear whether the ALJ considered these factors and the effect her ankle fracture had on her recovery in determining that Trenda was not under a disability as defined by the Social Security Act from May 13, 2001 through the date of his opinion.  It is also unclear whether the ALJ considered the possibility that Trenda may have been disabled for a closed period other than the duration she has alleged.

Therapist Nelson found in his June 2004 FCE that Trenda could work for up to six hours a day with gradual increase to eight hour days.  Dr. Askew, Trenda's treating physician, indicated in December 2004, two months before her return to work, that she may be able to work but would need to limit sitting and standing to one to two hour periods and to elevate her leg to relieve swelling.  Beginning in February 2005 Trenda did  return to work but receives significant accommodations, including the freedom to take breaks and to elevate her legs as needed.  Trenda testified that she does need to elevate her legs about twice a day.  The RFC found by the first ALJ included the need to elevate her legs, and the vocational expert at the second hearing testified, "I know of no jobs in which an employer would normally allow a client to lie down or lift their leg.  I could see it as a special accommodation but that would, that would not be normally how the work would be done."  (Tr. 801). Under these circumstances, the record supports a remand with directions to award disability benefits for the closed period, rather than a remand for reconsideration of the evidence at a new hearing.

### Conclusion

The court notes that the ALJ's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.  Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994).  However, an ALJ's findings of fact will be reversed, if "'a reasonable fact finder would have to conclude'" that the original finding was incorrect.  Warren v. Shalala, 29 F.3d 1287, 1290 (8th Cir. 1992) (citations omitted).   The ALJ did not give valid reasons for discrediting Therapists Bryce Nelson's FCE or Dr. Askew's opinions, failed to properly consider all of the evidence, and improperly used Trenda's smoking and current activities of daily living, including her employment, against her claim for a closed period of disability.   The cumulative effect of these errors renders the ALJ's decision unsupported by

substantial evidence.  It is **RECOMMENDED** that the decision of the Commissioner be reversed and the case be remanded for an award of benefits for the claimed closed period of disability.

Notice of Right to Object

Pursuant to Local Rule 72.1 (D)(3), any party may object to this recommendation within ten (10) days after being served with a copy.

Dated this 3rd day of September, 2009.

 /s/ *Karen K. Klein*
Karen K. Klein
United States Magistrate Judge